UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**TODD DWAYNE FRANK**          **CASE NO. 2:22-CV-00053**

**VERSUS**                     **JUDGE JAMES D. CAIN, JR.**

**CITY OF LAKE CHARLES ET AL** **MAGISTRATE JUDGE KAY**

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment [doc. 14] filed by defendants and seeking dismissal of plaintiff's claims under 42 U.S.C. § 1983. Plaintiff opposes the motion.

### I.
### BACKGROUND

This suit arises from plaintiff's arrest on March 22, 2012, by officers of the Lake Charles Police Department ("LCPD"). On that date officers responded to a 911 call reporting a reckless driver on Ryan Street in Lake Charles, Louisiana. Doc. 14, att. 4, pp. 2–5. The caller observed plaintiff driving at an excessive speed of over 80 miles per hour and veering all over the road and onto sidewalks. *Id.* The 911 operator routed the caller to a police officer, and at the officer's instruction the caller followed plaintiff in order to give information about his location to police. *Id.* at 5–7. In the process the caller observed the plaintiff continuing to drive erratically and nearly causing multiple accidents. *Id.* at 5–7. Sergeant Mitchell Sawyer intercepted the vehicle, also observed it driving erratically, and activated his lights and siren. Doc. 14, att. 5, pp. 11–12. Plaintiff did not stop, however,

and nearly struck several light poles. *Id.* at 11–14. Corporal Benjamin Randolph initially drove ahead to deploy spike strips, but then joined Sawyer in direct pursuit of plaintiff's vehicle. Doc. 14, att. 6, pp. 8–10. Plaintiff eventually came to a stop, with Sawyer and Randolph exiting their vehicles and shouting instructions as they approached plaintiff's vehicle, the window of which was rolled down. *Id.* at 11; doc. 14, att. 5, pp. 14–16. Instead of exiting the vehicle with his hands raised, as instructed, however, plaintiff remained in his vehicle and appeared to reach for the center console. Doc. 14, att. 5, pp. 14–16; Doc. 14, att. 6, p. 11. Fearing that plaintiff was going for a weapon, Sawyer then deployed his canine partner, Biko. Doc. 14, att. 5, pp. 15–18.

Biko was commissioned and joined the LCPD approximately eight days before plaintiff's arrest. Doc. 18, att. 2, pp. 6–7. He did not achieve his National Police Canine Association certification until the following year. *Id.* The city admitted that, in purchasing Biko, it chose the cheapest dog with the shortest training course. *Id.* at 15. Training records from 2014 show that Biko was still having issues with releasing on command after attacking a subject. Doc. 18, att. 3. The city also admitted that, compared to other dogs commissioned to work with the city, Biko's obedience was "marginal" early on. Doc. 18, att. 4, p. 56.

When first released at the scene of plaintiff's arrest, Biko ran to the driver's side door of the vehicle but did not enter through the open window as Sawyer hoped he would. *Id.* at 15–21. The officers then approached the vehicle and Sawyer saw that plaintiff's hands were empty. *Id.* Sawyer opened the door and gave plaintiff several verbal commands to exit the vehicle, but plaintiff did not comply. *Id.* at 18–21. Sawyer then saw plaintiff

reach for the center console and deployed Biko again, at which time Biko attacked plaintiff. *Id.* at 21–23. Biko chewed on plaintiff's arm and continued to do so even as Sawyer ordered him to disengage, and did not release until Sawyer reached into the vehicle and pulled him off. *Id.* 22–26. Sawyer admitted that it took him a "minute" to get Biko to let go after his initial verbal command. *Id.* at 25. Available video footage does not contradict the officers' version of events.

     After the dog released plaintiff remained in the vehicle and refused to emerge despite more verbal commands. *Id.* at 27–28. One of the other officers now at the scene, Corporal White, then tased plaintiff for five seconds. *Id.* At this point, Sawyer testified, Randolph yelled that plaintiff was again reaching for the console and Sawyer again released Biko. *Id.* at 28–29. Biko bit plaintiff's lower leg and Sawyer began pulling plaintiff out of the car, though plaintiff got caught on the seatbelt and Sawyer had to cut him out with a knife. *Id.* at 29–30. Sawyer did not order Biko to release until plaintiff had been completely removed from the vehicle. *Id.* After plaintiff's arrest for DWI, a search of the vehicle revealed no contraband or weapons. *Id.* at 30–31; doc. 14, att. 6, p. 13.

     Plaintiff argued that he did not recall driving erratically and accused the 911 caller of lying in his report. Doc. 14, att. 7, pp. 7–10. He admitted, however, that he was taking several prescription drugs at the time, including the muscle relaxant Soma and the narcotic pain killers Percocet and Lorcet, and had taken multiple doses by the time he got in his car that day. Doc. 14, att. 7, pp. 2–3. He further testified that he was scared when police approached his vehicle, and so attempted to keep his hands still. Doc. 18, att. 7, p. 7. Finally, he testified that he never reached for his center console and was only trying to

unbuckle his seatbelt. *Id.* at 9–10. Sawyer, on the other hand, testified that plaintiff claimed he was reaching for his cell phone, then later said he was trying to get his employment card, but never told the officers that he was trying to unbuckle his seatbelt. Doc. 14, att. 5, p. 33.

Plaintiff filed suit in the Fourteenth Judicial District Court, Calcasieu Parish, Louisiana, on March 22, 2013. Doc. 2, att. 3. There he raised claims under state law against several individual police officers in their individual capacities and against the City of Lake Charles, based on a theory of vicarious liability. *Id.* Over eight years later, in November 2021, plaintiff amended his complaint to add claims excessive force and municipal liability under federal law based on the officers' alleged Fourth Amendment violations. Doc. 4, att. 8. Defendants then removed the suit to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331. Doc. 1. They have now filed a motion for summary judgment, asserting that (1) the use of force by Officers Sawyer, White, and Randolph was reasonable under the circumstances and that no claim against them can survive under state or federal law; (2) the remaining officer defendants used no force against plaintiff and should therefore be dismissed; and (3) there is no municipal liability for the city under applicable federal law. Doc. 14, att. 2. Plaintiff opposes the motion. Doc. 18.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying

portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

#### A. Claims Against Officers

The court first resolves the question of whether the individual officers are entitled to qualified immunity for any Fourth Amendment violation. Qualified immunity provides

a shield for government officials performing discretionary functions, "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (internal quotations omitted). Courts use a two-step process to determine when this immunity applies, by looking to (1) "whether the plaintiff has adduced facts sufficient to establish a constitutional or statutory violation" and (2) "whether [the employee's] actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). The plaintiff bears the burden of overcoming the qualified immunity defense. *Bennett v. City of Grand Prairie, Tex.*, 883 F.2d 400, 408 (5th Cir. 1989).

The Fourth Amendment right to be free from excessive force during an arrest is clearly established. *E.g.*, *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016). With respect to the first prong, the officers are only entitled to qualified immunity at the summary judgment stage if their use of force was not "clearly excessive to the need" or if the excessiveness was not "objectively unreasonable." *Clark v. Massengill*, 641 F. App'x 418, 420 (5th Cir. 2016) (quoting *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)). The case must be evaluated "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Griggs*, 841 F.3d at 312 (internal quotation omitted). "Determining whether an officer's use of force was objectively reasonable 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to

evade arrest by flight.'" *Deshotels v. Marshall*, 454 F. App'x 262, 267 (5th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Plaintiff points to segments from the LCPD's policies on use of force, canine deployments, and traffic stops in order to argue that officers exceeded their authority and used an unreasonable amount of force to accomplish his arrest. In particular, he points to a lack of guidance on the use of canines compared to other types of force and the potential of canines like Biko to apply lethal force. These policies are devoid of context, however, and the record shows that Biko only ever applied non-lethal force by attacking plaintiff's arm and leg. Although the evidence suggests that plaintiff was never attempting to access a weapon and may only have been trying to unbuckle his seatbelt, the circumstances at the scene of the arrest still show that the use of force—namely, the deployments of Biko and the use of a taser—was not objectively unreasonable. Officers testified that plaintiff ignored multiple verbal commands and kept reaching towards the center console of his vehicle (in the same direction, incidentally, as his seatbelt buckle). Until the vehicle was searched, the officers had no way of knowing whether plaintiff had a weapon within reach. Plaintiff was also still inside a vehicle that he had recently taken on a dangerous, high-speed ride through city streets, and was positioned to flee the officers until he exited the vehicle. Despite Biko's obedience issues, the uncontroverted testimony does not suggest that Sawyer's deployments of Biko were unreasonable, that Sawyer allowed Biko to continue attacking plaintiff for an unreasonably long time under the circumstances, or that White's use of a taser was unreasonable in light of plaintiff's continued failure to exit the vehicle. Furthermore, there is no basis for holding the remaining officers liable for allowing

a reasonable use of force to be deployed. Accordingly, the officers are entitled to qualified immunity on any excessive force claims raised against them.

Plaintiff has also raised claims of excessive force against the officers under state law. "In Louisiana, excessive force claims are analyzed under a reasonableness standard similar to that used to evaluate § 1983 excessive force claims." *Deshotels*, 454 F. App'x at 269 (citing *Kyle v. City of New Orleans*, 353 So.2d 969, 972–73 (La. 1977)). Relevant factors include the known character of the arrestee, the risk faced by officers, the nature of the offense involved, the chance of the arrestee's escape if the particular means are not used, the existence of alternative methods, the relative "physical size, strength, and weaponry of the officers as compared to the arrestee, and the exigencies of the moment." *Id.* For the reasons outlined above, as well as the fact that the only other alternative method plaintiff points to is the officers' drawn firearms, the court finds that the use of force was reasonable under Louisiana law and that state law claims against the officers should also be dismissed.

### B. Liability of the City of Lake Charles

Plaintiff also seeks to hold the city liable for his injuries, on the grounds that it (1) is vicariously liable for the officers' use of excessive force under state law and (2) is liable for incidents of excessive force under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Because the court found no claim for excessive force under state law, plaintiff's claim of vicarious liability is barred. Likewise, plaintiff may only hold the city independently liable under *Monell* if it shows (1) a policymaker, (2) an official policy or custom, and (3) a violation of a constitutional right whose "moving force" is the policy or

custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). As described above, the court finds no violation of a constitutional right under these circumstances. Accordingly, there is no basis for any claim against the city in this matter.

## IV.
### CONCLUSION

For the reasons stated above, the Motion for Summary Judgment [doc. 14] will be granted and all claims in this matter will be dismissed with prejudice.

**THUS DONE AND SIGNED** in Chambers this 15th day of June, 2022.

_____
JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**